Lorene DAVIS, Plaintiff-Appellant,

v.

Bill WERNE, d/b/a Metalcraft Industries, Defendant-Appellee.

No. 81–4298.

United States Court of Appeals, Fifth Circuit.

April 22, 1982.

Charles H. Ramberg, Jackson, Miss., for plaintiff-appellant.

Thomas W. Sanford, Jackson, Miss., for defendant-appellee.

Before WISDOM, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff, Lorene Davis, brought this action under the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and TILA's implementing Regulation Z, 12 C.F.R. §§ 226.1 et seq., against the defendant, Bill Werne, d/b/a Metalcraft Industries ("Metalcraft"). Davis alleged that she and Metalcraft had consummated a consumer credit transaction, and that Metalcraft had failed to make the disclosures required by TILA and Regulation Z. Davis therefore claimed entitlement to the statutory penalty for nondisclosure provided by 15 U.S.C. § 1640.

The district court found for Metalcraft, based on the conclusion that no consumer credit transaction had been consummated within the meaning of TILA. Davis appealed. Although we find that Davis and Metalcraft had "consummated" a consumer credit transaction, we also find that Metalcraft did not fail to make any of the required disclosures. We therefore pretermit decision of the issue of whether TILA non-disclosure penalties may be imposed where after a credit transaction has been consummated within the meaning of the Act, it is mutually rescinded before any transaction has occurred, and therefore no credit is actually extended. Accordingly, we affirm the judgment of the district court.

## I. *The Factual Background*

The material facts are not disputed. On October 3, 1979, Ms. Davis entered into a contract (the "October contract") with Metalcraft for the purchase and installation of storm door and window guards on her home. The contract called for payment of the purchase price in forty-eight equal monthly installments, including a total finance charge of $919.01. In connection with this contract, Metalcraft provided Davis with a disclosure statement, the sufficiency of which is challenged by this lawsuit.

Metalcraft subsequently attempted to assign its financing agreement with Davis to a finance company. However, the finance company declined to purchase the contract. After learning of this, Metalcraft informed Davis the lender to whom Metalcraft had intended to assign the contract would not lend the money.

Ms. Davis then procured financing from another source, Mutual Mortgage Service, to whom she was referred by Metalcraft, as a possible source of funds. She contacted Mutual, and it loaned her sufficient funds to pay Metalcraft in cash, furnishing her disclosure statements not here attacked. (Unfortunately for Davis, her contract with Mutual obligated her to pay $364.80 more in finance charges than did her original contract with Metalcraft.) After Davis procured financing from Mutual, Metalcraft performed the work on Davis' home and received full cash payment for the work.

Davis then filed this TILA action, based on alleged nondisclosures in the October contract with Metalcraft. By agreement of the parties, the case was tried before a magistrate. After a bench trial, the court found that, because Metalcraft had not ex-

tended credit to Davis pursuant to the October contract, no actionable consumer credit transaction had been "consummated" within the meaning of TILA. Therefore, without reaching the merits of the plaintiff's nondisclosure claims, the court held for Metalcraft. We affirm on other grounds.

## II. *The Statutory Background*

■ Congress passed TILA to enhance "economic stabilization" and to strengthen "competition among the various ... firms engaged in the extension of consumer credit" by requiring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. To effectuate these purposes, TILA must be construed liberally in favor of the consumer. *Cody v. Community Loan Corp.*, 606 F.2d 499, 505 (5th Cir. 1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2973, 64 L.Ed.2d 846 (1980); *Sellers v. Wollman*, 510 F.2d 119, 122 (5th Cir. 1975).

■ TILA is a prophylactic measure that creates a system of "private attorneys general" to aid its enforcement. *McGowan v. King*, 569 F.2d 845, 848–49 (5th Cir. 1978). *See* 15 U.S.C. § 1640. In order to penalize noncomplying creditors and to deter future violations, these private attorneys general may recover the statutory penalties even if they have not sustained any actual damages, or even if the creditors are guilty of only minute deviations from the requirements of TILA and implementing Regulation Z. *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641, 647 (8th Cir. 1980); *Charles v. Krauss Co., Ltd.*, 572 F.2d 544, 546 (5th Cir. 1978).

## III. *Did Davis and Metalcraft "Consummate" a Consumer Credit Transaction?*

Regulation Z obliges creditors[1] to make the statutorily-mandated disclosures "be-

fore the transaction is consummated." 12 C.F.R. § 226.8(a). A transaction is "considered consummated *at the time a contractual relationship is created between a creditor and a customer* ... irrespective of the time of performance of either party." *Id.* § 226.2(kk) (emphasis added).

■ In the present case, Metalcraft and Davis undisputedly entered into a contractual relationship pursuant to which Metalcraft was required to extend, and Davis was obliged to accept, consumer credit within the meaning of TILA. Thus, the October contract clearly was "consummated" for TILA purposes.

The district court, however, apparently was of the opinion that, because Metalcraft never did extend credit as agreed, the subsequent abandonment of the contract somehow "unconsummated" the agreement for TILA purposes. This is not so. "The Truth in Lending Act is a 'disclosure' law.... It is the obligation to disclose, *not the duty of subsequent performance*, towards which the Act is directed." *Burgess v. Charlottesville Savings & Loan Ass'n*, 477 F.2d 40, 44–45 (4th Cir. 1973) (footnote omitted; emphasis in original). "[A]bandonment of the transaction ... is not a basis for relief from liability...." *Dryden, supra*, 630 F.2d at 647.

In *Dryden*, the plaintiff Dryden purchased a "lemon" automobile, with financing provided by the defendant creditor. The plaintiff returned the car, and the creditor refunded the plaintiff her down payment. The Eighth Circuit held that the creditor was nevertheless liable for any TILA violations in connection with the financing agreement:

The statutory damages are explicitly a bonus to the successful TILA plaintiff, designed to encourage private enforcement of the Act, and a penalty against the defendant, designed to deter future violations. *See Williams v. Public Finance Corp., supra; Hinkle v. Rock*

[1]. There is some dispute between the litigants whether, in the ordinary course of business, Metalcraft regularly *extends* credit or merely *arranges for the extension* of credit. However,

the issue is immaterial, because, in either case, Metalcraft is a "creditor" within the meaning of TILA and Regulation Z. *See* 12 C.F.R. § 226.2(s).

*Springs Nat. Bank*, 538 F.2d 295 (10th Cir. 1976). As to the fact that the transaction was abandoned by both parties and Dryden's money was returned, it is sufficient to note that recovery of statutory damages by a successful TILA plaintiff is not inconsistent with other remedies the plaintiff may have in connection with the same transaction, such as rescission of the loan contract, *see Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975), or even forfeiture to the plaintiff, under state usury laws, of the unpaid balance of the loan, see *Williams v. Public Finance Corp.*, [598 F.2d 349 (5th Cir. 1979)]. If Dryden proved that the disclosure provisions of the Act and Regulation Z were violated in connection with the January 26 transaction, [the creditor] is liable for statutory damages.

630 F.2d at 647 (footnote omitted).

In *Madewell v. Marietta Dodge, Inc.*, 506 F.Supp. 286 (N.D.Ga.1980), the plaintiffs purchased a car on credit and made a down payment. One week later, the plaintiffs returned the car and the dealer-creditor returned the down payment. As in *Dryden*, the court held that the creditor could not escape TILA liability due to the abandonment of the contract:

> [B]efore plaintiffs signed the contract and obligated themselves to the credit terms set forth in it, they were entitled to the disclosures required by truth-in-lending law. 15 U.S.C. § 1638. The Court finds this to be true even though the transaction contemplated when plaintiffs signed the contract was not consummated. The parties took action that would have been subject to truth-in-lending law had the transaction continued as contemplated, and defendant should have made the disclosures required by truth-in-lending law. Defendant was not entitled to rely on the possibility of an after-the-fact determination that the transaction would not go forward, *and this Court will not allow defendant to escape its responsibilities under truth-in-lending law on the basis of developments after the time at which disclosures, if required at all, were to be made. . . .* The fact that a credit

transaction is subsequently rescinded does not preclude recovery under truth-in-lending law. *Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975).

506 F.Supp. at 288–89 (emphasis added; footnotes omitted).

■ Thus, post-consummation abandonment of a financing agreement generally will have no effect upon a creditor's TILA liability. *See also Poirrier v. Charlie's Chevrolet*, 442 F.Supp. 894, 896 (E.D.Mo. 1978); *Copley v. Rona Enterprises, Inc.*, 423 F.Supp. 979, 982–83 (S.D.Ohio 1976). Ms. Davis through her able counsel consequently makes an extremely forceful argument that, because of the punitive-prophylactic purposes of the nondisclosure penalties, the creditor here is liable for these penalties despite the circumstance that the financing arrangements were cancelled before credit could be extended. Indeed, in the sparse decisional law relating to the issue, cited above, the courts have uniformly allowed such penalties as to "consummated" consumer transactions, despite the circumstance that credit was not actually extended due to post-consummation events.

On the other hand, neither the court nor either counsel could discover a decision involving the present facts: Where, after the consumer transaction was consummated, it was mutually rescinded and no financing transaction whatsoever in fact occurred. We recognize the forcefulness of counsel's intellectual arguments, based on prior jurisprudence, that the post-consummation rescission does not excuse the creditor from nondisclosure penalties, under the rationale underlying the statutory provision and motivating the decisions relied upon. Nevertheless, conceding that the financing agreement was "consummated," we like the district court find it difficult to accept an interpretation of the congressional intent that would by the fact of nondisclosure freeze the right to penalties, even though the financing transaction technically "consummated" is mutually rescinded prior to any transaction whatsoever between the parties. If two minutes after the agree-

ment was "consummated", the parties tore up the papers and called off the transaction by mutual consent, under the plaintiff's view the consumer is nevertheless entitled to statutory penalties for any nondisclosure defect.

Ultimately, however, we have decided to pretermit deciding the issue that would arise from distinguishing the present facts and refusing penalties, despite their award under what could be argued to be analagous circumstances. We have decided to do so, because on examination of the merits of the plaintiff's alleged TILA violations, we find that no disclosure violations took place.

We now consider the merits of the plaintiff's alleged TILA violations.

## IV.  *Did Metalcraft Violate TILA?*

Davis alleges that Metalcraft violated TILA in four respects. First, she contends that the numerical amounts on the disclosure were not legibly handwritten. Second, she contends that Metalcraft used improper terminology in disclosing the amount financed. Third, she asserts that Metalcraft failed to disclose the annual percentage rate of interest with sufficient accuracy. Finally, Davis argues that Metalcraft failed to identify the method of computing any unearned portion of the finance charge in the event of prepayment. We disagree with all four of these contentions.

### A.  *Legibility of the Handwritten Numerical Figures*

Regulation Z requires "all numerical amounts and percentages" to be printed in specified-minimum-size typescript or to be "legibly handwritten." 12 C.F.R. § 226.-6(a). Davis contends that the handwritten numerical figures on the copy of the contract that she received are illegible, because they are "so dim as to be virtually unreadable."

■ The copy of the contract introduced at trial is on yellow "NCR paper," the paper with which "carbon copies" may be made without the use of carbon paper. We have carefully scrutinized this document, and we

conclude that, although it is indeed rather dim in some places, all numerical figures are totally legible. Therefore, the plaintiff is not entitled to relief due to illegibility of the document.

### B.  *Disclosure of the "Amount Financed"*

Regulation Z mandates disclosure of the amount financed, with the numerical amount identified by the precise term "amount financed." 12 C.F.R. § 226.8(c)(7). Because of the importance of standardization of terms, different terms with the same meaning will not do; only the words "amount financed" will suffice. *See, e.g., Chapman v. Rhode Island Trust National Bank*, 444 F.Supp. 439, 441–44 (D.R.I.1978) (use of the term "unpaid balance" insufficient).

In the challenged October contract, Metalcraft used the term "unpaid balance of amount financed" rather than the simple term "amount financed." Davis contends that the disclosure therefore is not in accord with TILA. We cannot agree.

In *Lewis v. Walker-Thomas Furniture Co., Inc.*, 416 F.Supp. 514 (D.D.C.1976), the only case we have found that is arguably on point, the creditor used the term "total amount financed" rather than "amount financed." The court held that this was sufficient, because there was no possibility that the prefacing of the term "amount financed" with the word "total" would "in any way undercut or interfere with the disclosures required by the Act." 416 F.Supp. at 516. The court also noted that the addition of the word "total" was permissible pursuant to 12 C.F.R. § 226.6(c), which states:

> At the creditor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the information required by this part to be disclosed . . . .

(Emphasis added.) *See also* 15 U.S.C. § 1632(b).

■ Similarly, in the present case, we find that the prefacing of the mandatory term "amount financed" with the phrase "unpaid balance of" does not constitute a TILA violation. The precise term required by Regulation Z was included, and we do not find that the additional language might cause confusion or otherwise mislead the consumer. Accordingly, we reject the plaintiff's argument on this issue.

### C. Disclosure of the Annual Percentage Rate of Interest

At the time the October contract was executed, Regulation Z required Metalcraft to disclose the annual percentage interest rate with an accuracy at least to the nearest ¼ of one percent. *See* 12 C.F.R. § 226.5(b) (amended on Dec. 31, 1979 to require accuracy to within the nearest ⅛ of one percent). Davis alleges that, because the contract discloses an annual interest rate of 22.29%, Metalcraft has violated § 226.5(b), because the actual annual rate is 22.00%, which means that the deviation is greater than the permitted ¼ of one percent.

■ This argument, however, overlooks 12 C.F.R. § 226.6(h). Davis alleges that the contract *overstates* the correct rate of interest, and § 226.6(h) provides that overstatements of percentage rates do not constitute TILA violations, unless the overstatement is for the purpose of circumvention or evasion of disclosure requirements. Thus, because there are no allegations or showing of intent to evade disclosure requirements, the plaintiff's argument on this issue is without merit.

### D. Disclosure of the Method of Computing Any Unearned Portion of the Finance Charge in the Event of Payment

Because the October contract included a precomputed finance charge, Metalcraft was required to identify the method of computing any unearned portion of the finance charge in the event of prepayment, and to state the amount or method of computing any charge that might be deducted from the amount of any rebate of such unearned finance charge. *See* 12 C.F.R. § 226.8(b)(7). Davis concedes that such a disclosure was made in the challenged contract, but she asserts that the wording of the disclosure is ambiguous and incomprehensible. The relevant portion of the contract states:

REBATE FOR PREPAYMENT IN FULL: There is no prepayment penalty and a refund of the finance charge will be given based on a rebate of 6% per annum on all installments paid in advance.

■ We find this disclosure to be adequate. In our opinion, the provision unambiguously entitles the consumer to a rebate of a full 6% on an installment paid twelve months in advance, to a rebate of ¹¹⁄₁₂ of 6% on an installment paid eleven months in advance, and so forth. The courts and the Federal Reserve Board (the agency authorized by Congress to promulgate TILA-implementing regulations) have declined to require lengthy and complicated mathematical statements of rebate formulas, on the theory that they would be uninformative to the consumer, and would be likely to detract from other important disclosures. *See, e.g., Bone v. Hibernia Bank*, 493 F.2d 135, 139–40 (9th Cir. 1974). We therefore hold that Metalcraft complied with Regulation Z.

### Conclusion

Although the October contract was "consummated" and was therefore fully subject to TILA and Regulation Z, we cannot agree with the plaintiff Davis that Metalcraft failed to comply with the statute or its implementing regulations. Accordingly, although we disagree with the rationale of the district court, we AFFIRM the judgment.

AFFIRMED.