**Steven P. STREIT, Plaintiff-Appellant,**

v.

**FIRESIDE CHRYSLER–PLYMOUTH, INC., Defendant-Appellee.**

**No. 82–1672.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1982.
Decided Jan. 10, 1983.

Paul W. Grauer, Schaumburg, Ill., for plaintiff-appellant.

Gilbert W. Gordon, Chicago, Ill., for defendant-appellee.

Before PELL and POSNER, Circuit Judges, and BONSAL,* Senior District Judge.

PELL, Circuit Judge.

In this case we consider a claim under the Truth in Lending Act (the Act), 15 U.S.C. §§ 1601–1667e, based upon the failure of appellee automobile dealer to provide appellant consumer with a duplicate of the retail

* Dudley B. Bonsal, Senior District Judge for the Southern District of New York, sitting by des-

installment contract at the time the parties entered into a credit transaction. At the close of appellant's case, the district court granted appellee's motion for a directed verdict, holding that there never was a transaction between the parties to which the Act applied.

## I. FACTS

On September 8, 1979, Steven P. Streit agreed to purchase a 1978 Corvette from Fireside Chrysler-Plymouth, Inc. (Fireside), a dealership located in Schaumburg, Illinois. The purchase price was $14,644.23, less the trade-in allowance from Streit's 1975 Pontiac. Streit paid a $130 cash downpayment and signed a non-interest-bearing note for $2380, the balance of the downpayment, due on September 11. In addition, Streit asked Fireside to arrange forty-eight month financing, and he signed a retail installment contract setting forth the financing terms. Although the form recited that appellant received a copy of the contract, he testified that he did not receive one, a claim disputed by a Fireside employee called by Streit to testify.

Fireside employee Stephan Wilson testified at trial that he telephoned Streit on September 9 or 10 to inform him that appellant had understated the amount he owed a bank on the Pontiac by approximately $900, and that therefore, the car's trade-in value was $900 less than they had agreed. He testified that Streit promised to pay the $900 when he paid the balance of the downpayment on September 11.

Streit failed to pay the balance of the downpayment. Accordingly, Fireside never sent the financing contract to the Continental Bank for processing, although the bank had approved the agreement when Wilson telexed it to the bank on September 8. Shortly after September 11, Streit returned the car and keys to the dealer and declared that he would make no further payments for it; he asserted that there was an oil

ignation.

pressure problem and a difficulty with the power door locks that made him fear some future electrical malfunctions. Streit filed this action against Fireside and Continental on September 28, 1979. On September 30, Fireside sent a Mailgram to Streit demanding payment of $3320.93 on the car and threatening legal action against him if he did not pay within forty-eight hours. Streit did not make any payments in response and Fireside took no action against him. He eventually secured the return of his trade-in vehicle.

On January 2, 1980, the district court dismissed the action against Continental with prejudice. On May 1, 1981, the court denied defendant's motion to dismiss the complaint, rejecting defendant's claims that there was no violation of the Truth In Lending Act where the consumer suffered no damages, where the creditor had no intent to withhold the disclosure statement, and where the consumer knew and understood the terms of the credit agreement. Furthermore, the court held that a creditor could be held liable for technical violations of the Act.

A one-day trial was held on April 16, 1982. The sole issue was whether Fireside violated the Act by not giving Streit a copy of the disclosure statement. After Streit completed his case, Judge Leighton granted Fireside's motion for a directed verdict on the grounds that Streit never consummated the transaction. Streit appealed.

## II. THE TRUTH IN LENDING ACT

Section 1639 of the Act provides that a creditor extending consumer credit in a transaction "shall disclose" certain informa-tion to the consumer. 15 U.S.C. § 1639 (repealed effective 1982).[1] Section 226.8(a) of Regulation Z, the Federal Reserve Board regulations issued pursuant to the Act, provides that the disclosures shall be made before the transaction is consummated, 12 C.F.R. § 226.8(a) (repealed effective 1982); section 226.2(kk) defines consummation as the time a contractual relationship is created between the creditor and customer irrespective of the time of performance of either party, *id.* § 226.2(kk) (repealed effective 1982). Section 226.8(a) further provides that "[a]t the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified." Fireside's failure to give Streit a copy of the disclosure statement gave rise to this action.

The district court held that Fireside did not violate the Act because there never was a transaction between the parties. Specifically, Judge Leighton ruled that, because Streit never paid Fireside the balance of the downpayment, "plaintiff never consummated the transaction he promised to consummate." We agree that Streit never performed his part of the agreement, but we disagree with the district court that the financing agreement was not consummated for purposes of the Act.[2]

Fireside was a creditor under the Act because it "offer[ed] to extend or arrange for the extension of ... credit." 12 C.F.R. § 226.2(s) (repealed effective 1982). Nevertheless, the company contends that the credit transaction was not consummated because the Continental Bank never executed

---

1. Many sections of the Act and all of Regulation Z were repealed effective October 1, 1982, and replaced with similar provisions. The repealed sections, however, were in effect at the time of this transaction.

2. Appellant alternatively contended at trial that a credit transaction was consummated when Streit signed the three-day, non-interest-bearing promissory note for the balance of the downpayment, and that a disclosure statement accordingly was necessary. Because we already hold that the credit transaction was con-summated on September 8 when the parties signed the retail installment contract, we need not decide whether consummation occurred when Streit signed the note or whether separate disclosure was necessary. Even if disclosure were necessary, which is uncertain, *see Paull v. Chrysler Credit Corp.,* 544 F.Supp. 848, 851–52 (N.D.Ill.1982) (rejecting the need for separate disclosure with a deferred downpayment), our holding would be the same for the reasons advanced in our discussion of the retail installment contract.

the financing contract; that is, Fireside never assigned the financing contract to the bank.

The Fifth Circuit considered a situation similar to the one here in *Davis v. Werne,* 673 F.2d 866, 869–70 (5th Cir.1982). There, the consumer and the creditor contracted for financing; the creditor, like Fireside, attempted to assign the contract to a finance company (like Continental Bank). The finance company refused to accept the contract; the creditor informed the consumer that the assignee would not lend the money; and both parties terminated their deal.

The court held that there was a consummated transaction once the creditor and consumer contracted for financing. The court rejected the view that the transaction somehow became "unconsummated" when the contract was abandoned because of the finance company's refusal to accept the assignment. The court stated that, generally, postconsummation abandonment of a financing agreement has no effect upon a creditor's liability under the Act. 673 F.2d at 870. *Cf. Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641, 646 (8th Cir.1980) (holding the failure to make disclosures not excused by ultimate unenforceability under state law); *Williams v. Public Finance Co.,* 598 F.2d 349, 355 (5th Cir.1979) (same).

■ We agree with the court's reasoning in *Davis* and hold that the financing agreement was consummated here. The installment contract, which was between Streit and Fireside, not Streit and the bank, established a credit obligation, as the language of the contract makes clear: "Buyer agrees to pay to Seller the above Total of Payments in 48 successive monthly installments . . . ."

■ Nevertheless, we hold that the district court properly granted appellee's motion for a directed verdict. The rule is well established that a judgment will be affirmed if the record supports it, even though the district court gave a wrong reason for its decision. *Brown v. Marquette Savings & Loan Association,* 686 F.2d 608, 611 (7th Cir.1982).

Prior decisions of this court have indicated a pattern of liability for what might be regarded as merely technical violations of the Act. In *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (7th Cir.1980), we stated that "Congress did not intend that creditors should escape liability for merely technical violations," and we held that arguably inconsequential terminological deviations from the Act's required language were violations. *Id.* at 416. The purpose of such a strict interpretation of the Act is to further the congressionally mandated goal of standardization of terminology and procedures in credit transactions. *Id.*

Similarly, in *Brown v. Marquette Savings & Loan Association,* 686 F.2d 608, 614 (7th Cir.1982), we stated that it was no defense that the consumer was neither misled nor harmed by the violation. This rule is designed to encourage consumers to act as private attorneys general to enforce the Act. *Davis v. Werne,* 673 F.2d 866, 869 (5th Cir.1982); *Smith,* 615 F.2d at 416.

■ In our opinion, however, it is not necessary or appropriate to hold creditors absolutely liable for every non-compliance and to disregard completely the factual situation out of which the claim has arisen. We believe that Congress would not have intended to impose liability on a creditor for a technical violation where there never was a transaction (beyond entering into the financing agreement) because of the consumer's complete failure to fulfill his obligations under the contract. In addition, Streit substantially misstated relevant financial information (the payments outstanding on his trade-in) at the time the credit agreement was entered into. The consumer's acts were far more improper than anything the creditor did.

The Fifth Circuit has similarly been hesitant to impose liability on a creditor for a technical violation of the Act when no transaction other than entering into the credit agreement took place between the parties. In *Davis v. Werne,* 673 F.2d 866 (5th Cir.1982) (discussed *supra*), the court,

although holding that there was a consummated credit transaction despite the subsequent abandonment of the contract, expressed reluctance to hold the creditor liable for insufficient disclosure at the time of the agreement. "[We] find it difficult to accept an interpretation of the congressional intent that would by the fact of non-disclosure freeze the right to penalties, even though the financing transaction technically 'consummated' is mutually rescinded prior to any transaction whatsoever between the parties." *Id.* at 870. The court was troubled that the strictest view of the Act, advocated by the consumer, would require holding that, "[i]f two minutes after the agreement was 'consummated', the parties tore up the papers and called off the transaction by mutual consent, . . . the consumer is nevertheless entitled to statutory penalties for any nondisclosure defect." *Id.* at 870–71. Ultimately, the court concluded that it did not need to decide whether it would hold the creditor liable.

In the instant case, there is an even stronger basis for holding that the creditor has no liability for its technical noncompliance with the Act. In *Davis,* both parties abandoned the contract; here, Streit alone abandoned it, by not paying the downpayment. In addition, he understated the amount he owed a bank on his trade-in by nearly $900. Like the district court, we believe that Congress would not have intended the bizarre result of letting a consumer successfully sue a creditor after entering into a credit transaction despite not fulfilling any of his part of the bargain.

▋ Furthermore, the Truth In Lending Act was designed in large part to protect consumers from unscrupulous creditors and inaccurate and unfair billing and credit card practices. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–68, 93 S.Ct. 1652, 1657–60, 36 L.Ed.2d 318 (1973); 15 U.S.C. § 1601(a). The Act was not created, however, with the primary purpose of protecting the consumer from himself. It would be unfair to hold Fireside liable when Streit understood the terms of the financing agreement, signed his name about a quarter of an inch below a prominent two-line sentence reciting that he received a copy of the document, and, furthermore, where he misstated the amount of money he owed on his trade-in. Although these factors by themselves would not be sufficient to absolve a creditor from liability, they do have some significance when combined with the consumer's complete failure to fulfill his part of the bargain between the parties.

▋ Finally, the disclosure provisions of the Act are intended to promote the informed use of credit and to encourage consumers to "shop around" for the most favorable credit terms. *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 220, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981); *Brown v. Marquette Savings & Loan Association,* 686 F.2d 608, 612 (7th Cir.1982); *Dixey v. Idaho First National Bank,* 677 F.2d 749, 751 (9th Cir.1982). Streit did no shopping around; he was fully informed of the terms of the credit transaction; and he understood the terms of the agreement. Thus, excusing Fireside from liability in this case would not defeat the purposes of the Act.

## CONCLUSION

We do not regard the present decision as being inconsistent with prior decisions of this court. Rather, our holding is based on our opinion that it is not good policy and is not required by a reasonable construction of the Act to hold a creditor liable for a technical violation of the sort here involved: where the consumer was not misled nor financially harmed and where the consumer unilaterally breached the contract almost immediately after it was entered. The purposes of the Act and the respect the Act is due are not served by a rigid application that results in an unjustified windfall to a consumer.

AFFIRMED.