**A.J. APRIL and Annie April, Plaintiffs,**

v.

**UNION MORTGAGE COMPANY, INC., Defendant.**

**No. 88 C 465.**

United States District Court, N.D. Illinois, E.D.

March 6, 1989.

---

**810**

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In June 1987, A.J. April and Annie April ("the Aprils") entered into an agreement with Budget Construction Company ("Budget") to provide home improvements "at an ostensible price of $28,000." Second amended complaint ("complaint") ¶ 1. The Aprils executed a retail installment con-

tract with Budget that represented the cost of the work to be $20,000. *Id.* at ¶ 8.

In July 1987, a Budget representative allegedly advised the Aprils to refinance their obligation through Union Mortgage Company, Inc. ("Union"). The Aprils subsequently entered into a refinancing agreement with Union that covered the Aprils' debt to Budget, as well as certain other obligations.

Several documents were executed in connection with the refinancing, including a Truth in Lending statement,[1] a security agreement and a junior mortgage on the Aprils' home. *Id.* at ¶ 11. The Truth in Lending statement reflects that Union paid $20,000 to Budget. The Aprils allege Union paid Budget approximately $16,700 and retained $3,300 as a charge in the nature of "points." *Id.* at ¶¶ 1, 17. They contend Union and Budget agreed that Budget would systematically inflate the purported cash price of a transaction to allow Union to charge "points" without disclosure to the consumer. *Id.* at ¶ 1.

The statement accurately reported the annual percentage rate ("APR") to be 18.86%. *Id.* at ¶ 12. The "finance charge," described as "the dollar amount the credit will cost," was listed as $40,675.60. Union allegedly did not include a $1,019.40 "prepaid finance charge" in the $40,675.60 "finance charge." *Id.* at ¶ 14. The complaint does not allege that the $1,019.40 was in excess of the APR.

The Aprils filed this action against Union alleging violations of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667, the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), Ill.Rev.Stat. ch. 121½ ¶¶ 261–272, and the Illinois Interest Act, Ill.Rev. Stat. ch. 17 ¶¶ 6401–6419, as well as breach of contract. Union moves to dismiss all counts of the complaint except the breach of contract claim (Count VI).

## DISCUSSION

In ruling on a motion to dismiss, the court accepts all well-pleaded factual alle-

---

1. The Aprils' transaction with Union constituted an extension of consumer credit by a creditor that was subject to the disclosure requirements of the Truth in Lending Act. 15 U.S.C. § 1601.

gations as true and views them in the light most favorable to the plaintiffs. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). A claim will not be dismissed unless it appears beyond doubt that plaintiffs are unable to prove any set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Counts I and III

■ The Aprils charge that Union retained $1,019.40 of the amount financed as a "prepaid finance charge" but did not include this amount in the $40,675.60 "finance charge." *Id.* at ¶ 14.

In Count I, the Aprils argue Union's failure to include the prepaid finance charge in the finance charge constitutes a violation of Section 1605 of TILA. 15 U.S.C. § 1605(a) provides in relevant part:

> [T]he amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges ... imposed directly or indirectly by the creditor as an incident to the extension of credit [including] ... (3) loan fee, finder's fee, or similar charge.

The Aprils claim that Union imposed on them an undisclosed finance charge that entitles them to rescind the loan transaction. Complaint ¶¶ 27–28.

Union does not dispute that the $1,019.40 amount was an incident to the extension of consumer credit. It admits that the "finance charge" was understated but maintains that the APR was correct. If the APR is correct, Union argues, the finance charge need not be correct. Union's memo. at 8. Union claims it satisfied the congressional intent that credit terms be meaningfully disclosed and denies the Aprils were misled or damaged by the technical inaccuracy.

The regulations issued to implement TILA ("Regulation Z") requires a creditor to disclose clearly and accurately both the finance charge and the APR for each transaction. The finance charge must be accompanied by a "brief description such as 'the dollar amount the credit will cost you.'"

12 C.F.R. § 226.18(d). Where the amount financed exceeds $1,000, the finance charge is considered accurate if it is within $10 of the actual amount. *Id.* at n. 41. A creditor must also disclose the APR, together with a brief description of the yearly cost of the credit. 12 C.F.R. § 226.18(e). The finance charge and APR must be more conspicuously disclosed than any disclosure other than the creditor's identity. 12 C.F.R. § 226.17(a)(2).

The Seventh Circuit has recognized that Congress did not intend for creditors to escape liability for merely technical violations:

> It is not sufficient to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required.

*Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 416 (7th Cir.1980) (any misgivings creditors may have about the technical nature of the requirements should be addressed to Congress or the Federal Reserve Board, not the courts). A strict interpretation furthers the congressional goal of standardizing terminology and procedures in credit transactions. *Id.*

The Court later acknowledged limited factual circumstances in which it was neither necessary nor appropriate to hold creditors absolutely liable for every noncompliance. For example, the Court determined that a creditor was not liable for a technical TILA violation where the parties executed a financing agreement but the transaction failed because the consumer did not fulfill his obligations under the contract. *Streit v. Fireside Chrysler-Plymouth, Inc.*, 697 F.2d 193, 196–97 (7th Cir.1983). The Court noted that the consumer substantially misstated relevant financial information at the time he entered into the credit agreement. It concluded that Congress did not intend TILA to permit a consumer to sue a creditor despite his not having fulfilled any part of the bargain. *Id.* The evidence reflected that the consumer was fully informed and understood the terms of the credit transaction and the agreement. Excusing the creditor

from liability, therefore, did not defeat TILA's objective. *Id.*

In contrast, the Aprils were innocent consumers. No circumstances are asserted that warrant the release of Union from its TILA obligations. Strict construction of the disclosure requirements serves TILA's purpose. It is no defense to the TILA charge that the Aprils were neither misled nor harmed by the violation. *Fireside Chrysler–Plymouth,* 697 F.2d at 196. Union's motion to dismiss Count I is denied.

■ The Aprils contend the same facts support a claim under the Illinois Consumer Fraud Act. Specifically, they claim Union's failure to include the prepaid finance charge as a "finance charge" constitutes an unfair and deceptive practice in violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Section 2"). Ill.Rev.Stat. ch. 121½ ¶ 262. Section 2 provides in relevant part:

> [U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce are hereby declared unlawful....

Union argues that Count III should be dismissed because Union did not deceive the Aprils concerning the cost of credit. Union also contends that its conduct was authorized by TILA and its implementing regulations and, therefore, it is exempt from liability under Section 10b of the Consumer Fraud Act. Ill.Rev.Stat. ch. 121½ ¶ 270b(1). Section 10b(1) exempts from liability "(a)ctions or transactions specifically authorized by laws administered by any regulatory body...." Because Union's failure to disclose the prepaid finance charge as a "finance charge" provides the basis for a TILA claim, Union is not exempt from liability under the Consumer Fraud Act.

The Consumer Fraud Act prohibits deceptive statements or omissions in consumer transactions and is intended to provide broader protection than common law fraud actions. *Kellerman v. Mar–Rue Realty and Builders, Inc.,* 132 Ill.App.3d 300, 87 Ill.Dec. 267, 476 N.E.2d 1259 (1st Dist. 1985). The act prohibits misrepresentations of any nature. *Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill.App. 3d 154, 109 Ill.Dec. 541, 510 N.E.2d 409 (1st Dist.1986), *appeal denied,* 116 Ill.2d 578, 113 Ill.Dec. 320, 515 N.E.2d 129 (1987). Plaintiffs need not show they actually relied on or used due diligence in ascertaining the accuracy of misstatements, or that a defendant made misrepresentations in bad faith. *Munjal v. Baird & Warner, Inc.,* 138 Ill.App.3d 172, 92 Ill.Dec. 809, 485 N.E. 2d 855 (2d Dist.1985).

Union concedes that the "finance charge" was inaccurate. Count III therefore states a claim for relief under the Consumer Fraud Act. Union's motion to dismiss Count III is denied.

Counts II and IV

The TILA statement prepared by Union listed an "amount financed" of $35,000, itemized as follows:

| | |
|---|---|
| Amount paid on your account | $20,000.00 |
| Amount paid to others on your behalf | $13,980.60 |
| Prepaid finance charge | $ 1,019.40 |

The Aprils claim Union paid Budget only $16,700, kept the difference of $3,300 and advised the Aprils that Budget had been "paid in full." The Aprils contend the $3,300 was a finance charge that Union should have disclosed as a "finance charge." They allege that the failure to do so constitutes violations of TILA (Count II) and the Consumer Fraud Act (Count IV).

■ Union moves to dismiss Count II on the ground that the $3,300 amount was not a "finance charge," but rather a "cost of doing business" not incident to the extension of credit. Union maintains, therefore, that it was not obligated under TILA to disclose the differential. Union's memo. at 9.

Section 1605(a) of TILA defines a finance charge as

> The sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly

or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction.

15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a).

Finance charges include:

(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.

15 U.S.C. § 1605(a)(1). Regulation Z also enumerates several examples of a "finance charge," including

[c]harges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.

12 C.F.R. § 226.4(b)(6).

Regulation Z defines "cash price" as

[t]he price at which a creditor, in the ordinary course of business, offers to sell for cash the property or service that is the subject of the transaction.... The term does not include any finance charge.

The Aprils deny that $20,000 is the "cash price" for the work. The complaint alleges they entered into an agreement with Budget for home improvements "at an ostensible price of $28,000." Complaint ¶ 1. The Aprils allege the cash sales contract with Budget lists the "cash price" as $28,000: $20,000 is itemized as "job" and $8,000 as "KB." They concede they do not know the basis for the "KB" charge. Aprils' memo. at 9. However, the Aprils also allege the retail installment contract with Budget listed the cost of the work to be $20,000. Complaint ¶ 8. Accordingly, their allegation that $20,000 was not an amount payable in a comparable cash transaction is contradicted by their own pleadings.

Union denies the reduced amount ($16,-700) reflects a discount or additional charge to the Aprils requiring disclosure as a finance charge. 15 U.S.C. § 1605(a)(1). The $3,300 does not represent a cost imposed on the Aprils because they had already agreed to pay at least $20,000 for the work. Union maintains that the $3,300 differential is a "transactional cost which Budget absorbed to resell the Aprils' obligation" to Union. Union's memo. at 14.

As alleged, the $3,300 amount was not a discount or additional charge to the Aprils requiring disclosure under Section 1605(a)(1) of TILA. Budget originally agreed to finance the Aprils' $20,000 obligation. Budget transferred the Aprils' obligation to Union, for which Union paid Budget $16,700. The difference between the amount financed by Budget and the amount paid by Union is not the type of discount or additional charge contemplated by Section 1605(a)(1). Rather, the "discount" reflects the common practice of selling commercial paper for less than its face value. *See Jennings v. Edwards*, 454 F.Supp. 770, 777 (M.D.N.C.1978), *aff'd*, 598 F.2d 614 (4th Cir.1979).

Union further argues that the $3,300 amount was not a disclosable finance charge because it was a cost of doing business absorbed by Budget in marketing the Aprils' obligation. The official staff interpretation to 12 C.F.R. § 226.4 defines "costs of doing business" as follows:

Charges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such costs into consideration in determining the interest rate to be charged or the cash price of the property or service sold.

12 C.F.R. Part 226, Supp. 1, § 226.4(a)2. A discount in connection with the assignment of a credit obligation is deemed a finance charge if the creditor separately imposes a charge on the consumer to cover certain costs:

A discount imposed on a credit obligation when it is assigned to another party is not a finance charge as long as the discount is not separately imposed on the consumer. (See § 226.4(b)(6).)

*Id.*

The $3,300 differential in this case does not represent a charge imposed on the Aprils. It was not a finance charge, discount or additional charge required to be disclosed under Section 1605(a)(1). 15 U.S.

C. § 1605(a)(1). Count II does not state a claim under TILA. Union's motion to dismiss Count II is granted.

Count IV

The Aprils claim the same facts support a claim for a deceptive act or practice under the Consumer Fraud Act. Because Union's conduct was authorized by TILA and its implementing regulations, Union is exempt from liability under Section 10b of the Illinois Consumer Fraud Act. Ill.Rev.Stat. ch. 121½ ¶ 270b(1). Accordingly, Count IV does not state a claim under the Consumer Fraud Act. Union's motion to dismiss Count IV is granted.

Count V

█ Count V alleges Union violated the Illinois Interest Act ("the Act"), Ill.Rev. Stat. ch. 17 ¶ 6406. The Act limits the amount of any charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as consideration for the loan or in connection with the loan. *Id.* The Aprils charge that the sum of the $1,019.40 prepaid finance charge and the allegedly concealed $3,300 amount retained by Union constituted a charge in addition to the stated rate of interest, or "points," in excess of 3% of the principal amount permitted by the Act. Complaint ¶¶ 74–76.

Union argues the $3,300 was part of the principal sum, and not a "finance charge" or "points" as defined by the Act. Union's motion to dismiss at 4.

The $3,300 amount Union retained and did not pay to Budget did not constitute points, a discount or any other additional charge to the Aprils. The $1,019.40 prepaid interest was included in the Agreed Rate of Charge (stated interest rate) and APR. Therefore, it cannot be considered

"a charge in addition to the stated rate of interest payable" by the Aprils under Ill. Rev.Stat. ch. 17 ¶ 6406. Count V does not state a claim for relief under the Illinois Interest Act. Union's motion to dismiss Count V is granted.

Counts VII and VIII

█ In Counts VII and VIII, the Aprils seek a declaration that their contract with Union is unenforceable. Specifically, they claim the right to rescind their original work order with Budget because language in the order[2] unlawfully interfered with the Aprils' rescission rights under the Consumer Fraud Act[3] and TILA.[4] They argue their contract with Union is subject to claims and defenses they have against Budget. Complaint ¶¶ 93, 98. They purport to be exercising their right to rescind their contract with Union. *Id.* at ¶¶ 91–93, 96–98.

Union maintains the Aprils' rescission rights expired because Budget gave them notice of their right to cancel but the Aprils elected not to exercise the right. Union's motion to dismiss at 5. Union argues that as an assignee, it is liable under TILA only for disclosure violations apparent on the face of the disclosure statement. *Id.* at 6. Because the provision at issue was contained in the Aprils' installment agreement with Budget, not the TILA disclosure statement, Union maintains it is not liable. *Id.* Finally, Union contends that its agreement with the Aprils constitutes a "refinancing" that extinguished obligations under the Aprils' agreement with Budget. Because Union provided the Aprils with notice of their right to cancel their refinancing agreement with Union, and the Aprils chose not to cancel, Union claims they are foreclosed from asserting their rescission rights now. *Id.* at 6–7.

2. The June 1987 work order between Budget and the Aprils allegedly provided that the order was "binding and noncancellable on the date of its execution" and further stated:

if for any reason Owners shall attempt to cancel this contract, Owners agree to pay Contractor a cancellation charge of one-third (⅓) of the contract price as liquidated damages to Contractor for said unauthorized cancellation.

3. The Consumer Fraud Act requires that a consumer in "a sale of merchandise involving $25

or more" must be provided with notice at the time the contract is signed of his or her right to cancel the transaction within three days. Ill. Rev.Stat. ch. 121½ ¶ 262B.

4. TILA provides that an obligor in a consumer credit transaction has the right to rescind the transaction until midnight of the third business day following consummation of the transaction; the creditor is required to disclose such right. 15 U.S.C. § 1635(a).

The Aprils have no right to rescind their agreement with Union under either TILA or the Consumer Fraud Act. It is undisputed that they received separate notices of their right to cancel both their contract with Budget and their loan agreement with Union. In each case, the Aprils elected not to do so. The Aprils' agreement with Union represents a new transaction or obligation under the regulations that extinguished or replaced the previous transaction or obligation with Budget. 12 C.F.R. Part 226, Supp. 1, § 226.20(a) at 1, 5. Union satisfied its obligation under TILA to disclose the Aprils' rescission rights. Neither TILA nor the Consumer Fraud Act affords them the right to rescind their agreement with Union now—over a year and a half after its execution. Union's motion to dismiss Counts VII and VIII is granted.

## CONCLUSION

Union's motion to dismiss Counts II, IV, V, VII and VIII of the second amended complaint is granted; Counts II, IV, V, VII and VIII are dismissed with prejudice. Union's motion to dismiss Counts I and III is denied. Union is directed to answer Counts I, III and VI of the second amended complaint by March 20, 1989.