Joseph PERINO, Plaintiff,

v.

MERCURY FINANCE COMPANY OF ILLINOIS, Defendant.

No. 94 C 7152.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 22, 1995.

Opinion Denying Motion to Alter or Amend Judgment Oct. 12, 1995.

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, O. Randolph Bragg, Chicago, IL, for plaintiff.

Eugene Joseph Kelley, Jr., John L. Ropiequet, Linda M. Godzicki, Arnstein & Lehr, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ANDERSEN, District Judge.

This case comes before the court on the 12(B)(6) motion of defendant, Mercury Finance Company of Illinois ("MFC Illinois"), to dismiss plaintiff Joseph Perino's complaint for failure to state a claim upon which relief can be granted. For the following reasons, we grant defendant's motion to dismiss.

## *BACKGROUND*

Plaintiff's well-pleaded allegations, which the Court treats as true and views in a light most favorable to the plaintiff for purposes of this motion, are as follows. On May 20, 1993, the plaintiff, Joseph Perino of Burbank, Illinois, purchased a used 1990 Chevrolet Cavalier from Mancari's Chrysler Plymouth, Inc. ("Mancari Chrysler"). Amended Complaint ¶ 20. Mancari Chrysler agreed to arrange financing for plaintiff with the defendant, MFC Illinois, a Delaware corporation with its principal place of business in Northbrook, Illinois. *Id.* at ¶ 22. MFC Illinois is a "sales finance agency" whose primary business includes purchasing individual installment sales contracts from automobile dealers and retail vendors, extending installment loans directly to consumers, and selling credit insurance and related products. *Id.* at ¶¶ 5, 7.

Mancari Chrysler informed plaintiff that MFC Illinois' annual percentage rate ("APR") was 41.04%. *Id.* at ¶ 24. Plaintiff then executed a retail installment contract with Mancari Chrysler for the quoted APR of 41.04%. *Id.* at ¶ 28; Exhibit B. In addition, plaintiff also purchased credit life and

disability insurance which was included in the installment contract. *Id.* ¶¶ 33–34. The policy covered monthly payments on the installment contract in the event plaintiff became disabled and unable to pay. *Id.*

MFC Illinois subsequently purchased the plaintiff's contract from Mancari Chrysler at a rate lower than the original 41.04% APR. *Id.* at ¶¶ 25–30. In addition, MFC Illinois then returned or credited part of the 41.04% rate to Mancari Chrysler. *Id.* at ¶ 30. "For example, if MFC Illinois' 'buy rate' applicable to a contract was 30% and the dealer secured the consumer's signature on a contract providing for 40%, MFC Illinois and the dealer would split the 10% difference." *Id.* ¶ 25. Neither MFC Illinois nor Mancari Chrysler disclosed this discounted transaction to plaintiff. *Id.*

On June 17, 1994, plaintiff became disabled and was unable to make regular payments on the installment contract. *Id.* at ¶ 45. Soon thereafter plaintiff informed MFC Illinois of his disability and filed a claim under the policy of disability insurance with the carrier, Crown Life. *Id.* at ¶ 46. Crown Life honored plaintiff's claim and paid out the requisite benefits. *Id.* at ¶¶ 47–48. Unfortunately, the benefits were not paid to plaintiff until October 6, 1994. *Id.* As a result, plaintiff was unable to make payments on the installment contract for several months. On September 20, 1994, MFC Illinois repossessed plaintiff's car. *Id.* at ¶ 50. Plaintiff again notified MFC Illinois of his disability and requested the return of his car. *Id.* at ¶ 52. MFC Illinois refused to return the car unless plaintiff paid the past due amounts on the installment contract. *Id.*

On January, 10, 1995, Plaintiff filed a four count amended complaint to which MFC Illinois' motion to dismiss is directed. In Count I plaintiff alleges that MFC Illinois violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the mail fraud statute 18 U.S.C. § 1341 by paying secret "kickbacks" of finance charges to auto dealers. The remaining counts are state law claims before this Court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367. In Count II, plaintiff alleges that the same conduct violated the Illinois Con-

sumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Count III alleges that MFC Illinois violated the Illinois Consumer Fraud Act by repossessing plaintiff's car after he had become disabled and while his disability insurance claim was still pending. Finally, in Count IV plaintiff alleges that MFC Illinois' repossession notices violate § 9–504 of the Uniform Commercial Code ("UCC"). Further, plaintiff brings all four of these counts on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

## *DISCUSSION*

In considering a motion to dismiss, the court must accept as true all the well-pleaded material facts in the complaint and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). If fraud is alleged, Rule 9(b) of the Federal Rules of Civil Procedure requires the underlying facts of the lawsuit to be set out with particularity. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). Further, the complaint should not be dismissed unless it appears, beyond a doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### *I. RICO*

Count I alleges that MFC Illinois, an enterprise as defined by 18 U.S.C. § 1961(4), violated RICO by paying secret "kickbacks" of finance charges to auto dealers. Further, plaintiff alleges that this scheme to conceal the "kickbacks" to the dealers constituted a scheme or artifice to defraud within the meaning of the mail fraud statute, 18 U.S.C. § 1341. Defendant moves to dismiss Count I of the complaint for failure to state a claim for a RICO violation or mail fraud. Specifically, defendant contends that plaintiff has alleged no illegal acts by MFC Illinois.

The heart of plaintiff's RICO and mail fraud claims concerns allegations that MFC Illinois had a policy of entering into "secret agreements" with Mancari Chrysler and oth-

er dealers in which: 1) MFC Illinois would purchase retail installment contracts at a specific rate of less than (in plaintiff's case) 41.04%; 2) MFC Illinois allowed the dealers to charge their customers more than MFC Illinois' interest rates to the dealers; 3) MFC Illinois and the dealers would "split the difference," and; 4) the dealer's customers would not be told that the dealers kept their part of the difference. *Id.* at ¶¶ 25, 57. Plaintiff alleges that this discounted transaction represents some type of "kickback" to the dealer for misrepresenting MFC Illinois' rate to the consumer.

■ Defendant's conduct is neither fraudulent nor is it an illegal "kickback". The plaintiff's "kickback" allegations focus on nondisclosure of the transaction or discount between MFC Illinois and Mancari Chrysler which resembles a typical commission. The Truth-in-Lending Act does not require disclosures of this kind. The Act requires only that a consumer be informed of the name of the creditor, the amount financed, and the APR. *See* 12 C.F.R. § 226.17 *et seq.* MFC Illinois made all required disclosures to plaintiff. Repeated allegations of "secret agreements" and "kickbacks" do not transform this perfectly legal conduct into actionable fraud under RICO.

Judge Leinenweber addressed a similar issue in *Balentine v. Union Mortgage Company*, No. 91 C 8213, 1994 WL 34256 (N.D.Ill. Feb. 2, 1994). In *Balentine*, the plaintiff brought an action for fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act alleging that the defendant unlawfully engaged in the purchase of retail installment contracts from a home improvement dealer at 15 to 40 percent less than face value. No. 91 C 8213, 1994 WL 34256, at *1 (N.D.Ill. Feb. 2, 1994). Similar to the instant case, the discounted price was not disclosed to the consumer. *Id.* Judge Leinenweber held that the alleged failure to disclose this discount to the consumer is specifically authorized by, and in compliance with, the federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (1993). *Id.* at *2. Specifically, section 1605(a) of TILA only requires disclosure of finance charges. *Id.* The Court explained that the

discount in this case was not a finance charge but a "cost of doing business." *Id.* "Charges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such charges into consideration in determining the interest rate to be charged or the cash price of the property or services sold." *Id.* (quoting Official Staff Commentary to 12 C.F.R. § 226.4(a)2). Likewise, in *April v. Union Mortgage Co., Inc.*, the Court held that the difference between the cash price of the work and the price at which the contract is sold is not required to be disclosed. 709 F.Supp. 809, 813–14 (N.D.Ill.1989).

Accordingly, plaintiff has alleged only legal acts by MFC Illinois. Therefore, the defendant's motion to dismiss for failure to state a claim for RICO violations or mail fraud is granted. Because Count I is dismissed, the Court does not reach the issue of class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

## II. STATE LAW CLAIMS

Since Count I is dismissed, the Court has no independent jurisdiction over the pendent state law claims for violations of the Illinois Consumer Fraud Act and the Uniform Commercial Code. Accordingly, Counts II, III, and IV are also dismissed. Again, because Counts II, III, and IV are dismissed, the Court does not reach the issue of class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

## CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss the complaint is granted.

IT IS SO ORDERED.

## MEMORANDUM OPINION AND ORDER ON MOTION TO ALTER OR AMEND

This case is before the Court on the motion of the plaintiff, Joseph Perino, to alter or amend the judgment dismissing his complaint pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. For the following reasons, the plaintiff's motion is denied.

## BACKGROUND

On May 20, 1993, the plaintiff, Joseph Perino of Burbank, Illinois, purchased a used 1990 Chevrolet Cavalier from Mancari's Chrysler Plymouth, Inc. ("Mancari Chrysler"). Amended Complaint ¶ 20. Mancari Chrysler agreed to arrange financing for plaintiff with the defendant, MFC Illinois, a Delaware corporation with its principal place of business in Northbrook, Illinois. *Id.* at ¶ 22. MFC Illinois is a "sales finance agency" whose primary business includes purchasing individual installment sales contracts from automobile dealers and retail vendors, extending installment loans directly to consumers, and selling credit insurance and related products. *Id.* at ¶¶ 5, 7.

Mancari Chrysler informed plaintiff that MFC Illinois' annual percentage rate ("APR") was 41.04%. *Id.* at ¶ 24. Plaintiff then executed a retail installment contract with Mancari Chrysler for the quoted APR of 41.04%. *Id.* at ¶ 28; Exhibit B. In addition, plaintiff also purchased credit life and disability insurance which was included in the installment contract. *Id.* ¶¶ 33-34. The policy covered monthly payments on the installment contract in the event plaintiff became disabled and unable to pay. *Id.*

MFC Illinois subsequently purchased the plaintiff's contract from Mancari Chrysler at a rate lower than the original 41.04% APR. *Id.* at ¶¶ 25-30. In addition, MFC Illinois then returned or credited part of the 41.04% rate to Mancari Chrysler. *Id.* at ¶ 30. "For example, if MFC Illinois' 'buy rate' applicable to a contract was 30% and the dealer secured the consumer's signature on a contract providing for 40%, MFC Illinois and the dealer would split the 10% difference." *Id.* ¶ 25. Neither MFC Illinois nor Mancari Chrysler disclosed this discounted transaction to plaintiff. *Id.*

On June 17, 1994, plaintiff became disabled and was unable to make regular payments on the installment contract. *Id.* at ¶ 45. Soon thereafter plaintiff informed MFC Illinois of his disability and filed a claim under the policy of disability insurance with the carrier, Crown Life. *Id.* at ¶ 46. Crown Life honored plaintiff's claim and paid out the requisite benefits. *Id.* at ¶¶ 47-48. Unfortunately, the benefits were not paid to plaintiff until October 6, 1994. *Id.* As a result, plaintiff was unable to make payments on the installment contract for several months. On September 20, 1994, MFC Illinois repossessed plaintiff's car. *Id.* at ¶ 50. Plaintiff again notified MFC Illinois of his disability and requested the return of his car. *Id.* at ¶ 52. MFC Illinois refused to return the car unless plaintiff paid the past due amounts on the installment contract. *Id.*

The plaintiff brought the instant action against the defendant, MFC Illinois, on January 10, 1995 alleging violations of the mail fraud provision, 18 U.S.C. § 1341, of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), in Count I of a four count amended complaint. Specifically, Count I alleged that MFC Illinois paid secret "kickbacks" of finance charges to auto dealers and then engaged in a scheme to conceal these payments. The remaining three counts of the amended complaint were state law claims before this Court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367. Count II alleged that the same conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Count III alleged that MFC Illinois violated the Illinois Consumer Fraud and Deceptive Business Practices Act by repossessing plaintiff's car after he had become disabled and while his disability insurance claim was still pending. Finally, Count IV alleged that MFC Illinois' repossession notices violate § 9-504 of the Uniform Commercial Code ("UCC"). Further, plaintiff brought all four of these counts on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

In a Memorandum Opinion and Order of September 21, 1995, we granted the defendant's motion to dismiss the plaintiff's amended complaint for failure to state a RICO claim. Consequently, we dismissed the remaining three counts of the amended complaint for lack of independent jurisdiction over the pendent state law claims. On September 29, 1995, the plaintiff filed the instant motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e).

**318**

## DISCUSSION

Rule 59(e) allows a party to file a motion to alter or amend a judgment no later than ten days after entry of the judgment. Fed. R.Civ.P. 59(e). Motions for reconsideration enable a party to request that the district court correct manifest errors of law or fact. *Publisher's Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985). Specifically, a motion for reconsideration is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issues to the Court. Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990).

In this case, the plaintiff requests this Court to vacate its Memorandum Opinion and Order pursuant to Fed.R.Civ.P. 59(e) because the first amended complaint "did not adequately convey to the Court that the dealer was acting as the agent of Perino in obtaining financing, that MFC Illinois induced the dealer to breach the duty it owed Perino as his agent and that MFC Illinois' conduct is explicitly illegal because it constitutes commercial bribery in violation of 720 ILCS 5/29A–1." In further support of his motion, the plaintiff requests leave to file a second amended complaint which, when "taken into consideration" by the Court, demonstrates that "MFC Illinois' action[s] are in violation of Illinois law and illegal."

In order to state a claim under RICO, 18 U.S.C. § 1962(c), the plaintiff must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir.1994). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten year period. *See* 18 U.S.C. § 1961(5). RICO defines "racketeering activity," also referred to as "predicate acts," as acts indictable under any one of several federal or state offenses, including mail fraud under 18 U.S.C. § 1341. *See* 18 U.S.C. § 1961(1)(B); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir.1992).

The racketeering activity on which the plaintiff's complaint was premised was mail fraud. *See* 18 U.S.C. § 1341. This type of RICO claim requires the plaintiff to establish that the defendant (1) has participated in a scheme to defraud and (2) has mailed or knowingly has caused to be mailed a letter or other material for the purpose of executing the scheme. *McDonald*, 18 F.3d at 494. The mail fraud provision encompasses any "scheme to [defraud or] deprive another of money or property by means of false pretenses, representations, or promises." *Richards v. Combined Insurance Company of America*, 55 F.3d 247, 251–252 (7th Cir.1995) (quoting *Carpenter v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 321, 98 L.Ed.2d 275 (1987)). The words "to defraud" in the mail fraud statute "usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *Richards*, 55 F.3d at 252 (quoting *McNally v. United States*, 483 U.S. 350, 358, 107 S.Ct. 2875, 2880, 97 L.Ed.2d 292 (1987)).

In this case, we dismissed the RICO claim because the plaintiff failed to allege a "racketeering activity" or "predicate act" of mail fraud as required by the statute. Specifically, we found that the plaintiff failed to allege any scheme to defraud. The plaintiff's "kickback" allegations focused on nondisclosure of the transaction or discount between MFC Illinois and Mancari Chrysler. However, the alleged failure to disclose this discount does not violate either federal or state law in a manner which triggers the RICO statute. MFC Illinois made all required disclosures under the federal Truth-in-Lending Act. Accordingly, MFC Illinois did not engage in fraudulent conduct which constitutes a "scheme to defraud" under the mail fraud statute, and his RICO claim must therefore fail. Moreover, we reemphasize that the plaintiff's repeated allegations of "secret agreements" and "kickbacks" do not trans-

form this conduct into actionable fraud under RICO.

 The plaintiff now requests this Court to consider a second amended complaint in support of his motion. The defendant correctly notes that Rule 59(e) does not concern amendments to pleadings. Even if we consider the new complaint as the plaintiff requests, the second amended complaint still fails to state a federal RICO claim. According to the plaintiff's own admission, the additional language in the second amended complaint merely alleges another state law claim. Specifically, the plaintiff alleges that MFC Illinois' conduct is illegal because "it constitutes commercial bribery in violation of 720 ILCS 5/29A–1." Only certain state offenses which are "chargeable under State law and punishable by imprisonment for more than one year" constitute "racketeering activity" under the RICO statute. *See* 18 U.S.C. § 1961(1)(A). Although bribery is defined as a "racketeering activity" under RICO, 18 U.S.C. § 1961(1)(A), commercial bribery under Illinois law is only punishable by a fine not exceeding $5000. *See* 720 ILCS 5/29A–3. Therefore, this additional state law claim does not trigger the RICO statute. We must deny the plaintiff's motion to alter or amend the judgment.

### CONCLUSION

For all of the foregoing reasons, the plaintiff's motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) is hereby denied. The defendant's request that the Court impose Rule 11 sanctions is also denied. It is so ordered.