Adnan CEMAIL, Terry A. Cemail, Terry L. Kennedy, Thomas A. Kennedy, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

VIKING DODGE, INC., AmeriCredit Corporation, and Chrysler Financial Corporation, Defendants.

No. 97 C 908.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 28, 1997.

**1298**

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, James Stuart Harkness, Charles Emil Petit, Edelman & Combs, Chicago, IL, for Plaintiffs.

Francis P. Kasbohm, Gary Feiereisel, John Michael Brom, Terrence Franklin Guolee, Fraterrigo, Beranek, Feiereisel & Kasbohm, Chicago, IL, for Defendants.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

This is a class action lawsuit brought by the plaintiffs Adnan and Terry Cemail (the Cemails) and Terry and Thomas Kennedy (the Kennedys) on behalf of themselves and all others similarly situated. Plaintiffs brought this six-count action against defendants Viking Dodge, Inc. (Viking), AmeriCredit Corporation (AmeriCredit) and Chrysler Financial Corporation (CFC) alleging claims under the Truth In Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/2 *et seq.*, and the Illinois Motor Vehicle Retail Installment Sales Act (MVRISA) 815 ILCS 375/5 *et seq.*, in connection with their purchase of automobiles from defendant Viking.

In Count I, plaintiffs allege that all defendants are liable for violating TILA, 15 U.S.C.

§ 1641, because Viking charged a different price to consumers purchasing automobiles with cash than it did to those using credit, but failed to disclose this difference in price as a "finance charge." In Count II, plaintiffs allege that the same behavior subjected all defendants to liability under ICFA, 815 ILCS 505/2, 10a. In Count III, plaintiffs allege that all defendants violated MVRISA, 815 ILCS 375/5, 24b, and the ICFA, 815 ILCS 505/2E–F, 10a, by engaging in the above-described acts as well as falsely representing that the extended warranty charge listed in the contract was paid to a third party, when in fact a substantial amount of the fee was retained by Viking. In Count IV, the Kennedy plaintiffs allege that defendants Viking and CFC (but not AmeriCredit) violated TILA and accompanying regulations, Regulation Z, 12 C.F.R. § 226.17(a)(1)–18, by falsely representing that the extended warranty charge listed in the consumer contract was paid to a third party, when in fact a substantial amount of the fee was retained by Viking. In Count V, the Kennedy plaintiffs allege that defendants Viking and CFC violated ICFA, 815 ILCS 505/2, 10a, by engaging in the same behavior described in Count IV. In Count VI, the Kennedy plaintiffs allege that Viking and CFC violated MVRISA, 815 ILCS 375/5, 24b, and ICFA, 815 ILCS 5052E–F, 10a, by engaging in the same behavior described in Count IV above.

Defendants CFC and AmeriCredit have moved to dismiss each of plaintiffs' applicable claims. This memorandum addresses both of these motions, specifying, when appropriate, to which defendant our holdings apply. We conclude that AmeriCredit's motion to dismiss is granted in its entirety and CFC's motion to dismiss is granted in part and denied in part.

### BACKGROUND

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, we accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Travel All Over the World, Inc. v. The Kingdom of Saudi Ara-*

*bia,* 73 F.3d 1423, 1429 (7th Cir.1996). Read in this light, the facts are as follows:

On June 29, 1996, the Cemails purchased a new 1996 Dodge Neon from Viking. They purchased the car for personal, family and household purposes and the transaction was documented as a consumer credit transaction by Viking. At the time of the purchase a sign was on the Neon's window which stated in part, "WAS $11,095, IS $9345." The Cemails negotiated the purchase of the car relying on the price marked as the "IS" price of $9,345. They ultimately agreed to purchase the Neon, and Viking had them sign a blank contract, telling them that certain figures would be filled in once the financing was approved by the lender. When the Cemails received a copy of the contract, however, the figures on the form were based on the $11,-095 price, rather than the discounted price that had been posted in the car's window on the day of the sale. The Cemails' contract was assigned to AmeriCredit.

The Kennedys had a similar experience with Viking when they purchased a new Dodge Avenger on August 10, 1996. The car had a sign in its window which said in part, "WAS $22,000, IS $18,000." The Kennedys accordingly negotiated around the $18,000 price and signed a blank contract after Viking showed them figures on a computer screen based on the $18,000 price. Once again, however, when the contract arrived in the mail, the figures that had been placed on it were based on the $22,000 "WAS" price that had appeared on the vehicle on the day of the sale. The plaintiffs also discovered a discrepancy with the extended warranty disclosures appearing on the contract documents. In a section titled, "Other Charges Including Amounts Paid to Others on Your Behalf," the contract stated that $780 had been "paid to" Portfolio, a warranty provider, for the extended warranty. Plaintiffs discovered that, in fact, a substantial portion of the warranty fee was retained by Viking and not paid to Portfolio, as the contract represented. The Kennedys' contract was assigned to CFC.

When the Kennedys and Cemails questioned Viking about the price difference, Viking responded that the lower price marked on the cars as the "IS" price only applied to cash sales, and not to sales that were being financed. Plaintiffs accordingly brought the present action against Viking, as well as AmeriCredit and CFC.

## DISCUSSION

### I. Standard of Review

In order to have a claim dismissed under Rule 12(b)(6) the moving party must meet a high standard. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not its merits. *Triad Ass'n Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir. 1988). Generally, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v.. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985)

### II. Count I: The Relationship Between the Claims Preservations 'Clause Required by Federal Regulations and TILA

In Count I, plaintiffs allege that Viking violated TILA by charging a different price to cash and credit purchasers of the same automobile, but failing to disclose that difference in price and classify it as a finance charge. Plaintiff further argues that as creditor assignees of Viking, both CFC and AmeriCredit can be held accountable for any TILA violation for which Viking is liable. Plaintiff bases this claim on a clause contained in the original contracts between the plaintiffs and Viking. That clause provides:

> **Any holder** of this consumer credit contract is **subject to all claims and defenses which the debtor could assert against the seller** of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder

by the debtor shall not exceed amounts paid by the debtor hereunder.

This provision (commonly known as a "claims preservation" clause) is required by federal regulation, 16 C.F.R. § 433.2, and has the practical effect of eliminating the UCC's holder-in-due-course principle.[1] *See Armstrong v. Edelson*, 718 F.Supp. 1372, 1378 (N.D.Ill.1989) (observing that all consumer contracts contain such clauses because federal regulations so require). Thus, it enables consumers to bring any claim they have against the seller of a product against subsequent assignees of the sales contract on which the claim is brought.

TILA also has certain provisions governing the liability of contract assignees in the consumer finance situation. Specifically, the Act provides that

> any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor **may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement,** except where the assignment was involuntary.

15 U.S.C. § 1641(a) (emphasis added).

■ The parties to this action disagree about what effect the language in TILA has on the claims preservation clause required by the federal regulations. Defendants CFC and AmeriCredit argue that TILA is a limitation on the claims preservation clause and, consequently, the effect of the clause in a contract governed by TILA is to preserve only claims that arise from TILA violations which are apparent on the face of the contracts. Plaintiff, on the other hand, argues that the claims preservation clause is part of the contract and should be interpreted literally and without reference to TILA, thereby preserving all claims that could have been brought against the original lender.

■ We think defendants espouse the proper view. The purpose of the FTC rule is to preserve a consumer's claims "to defeat or diminish the right of a creditor to be paid," where the seller has failed to keep his side of the bargain. *Lindsey v. Ed Johnson Oldsmobile, Inc.*, 1996 WL 411336, *7 (N.D.Ill.1996) *aff'd on reconsideration*, 1996 WL 529417 (1996) citing *Armstrong v. Edelson*, 718 F.Supp. 1372, 1378 (N.D.Ill.1989). It is not the stated purpose of the rule to override the express and narrowly tailored language of federal statutes such as TILA, in which Congress has specifically decided that assignee creditors will only be liable for TILA violations that are apparent on the face of the disclosure statement. *Id.* Moreover, to allow the FTC regulation to effectively nullify the specific language of § 1641(a) would be to elevate an FTC regulation over the language of TILA, thereby making the portion of TILA which pertains to assignee liability superfluous. *Id. See also, Vietnam Veterans of America, Inc. v. Guerdon Industries, Inc.*, 644 F.Supp. 951, 965 n. 10 (D.Del.1986) (discussing the relationship between TILA and the holder-in-due-course rule) and *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F.Supp. 1295, 1301–02 n. 8 (D.Del.1990) (same).

Consequently, we hold that CFC and AmeriCredit can be held liable only for defects that are apparent on the face of the disclosure statement. The difference between the "WAS" price and the "IS" price, which plaintiffs allege was an undisclosed finance charge in violation of TILA, was not apparent on the face of the disclosure statements. Neither CFC nor AmeriCredit could have discerned from the documents that, although the contracts had been negotiated around the "IS" price, that price was applied only to cash sales, unbeknownst to the purchasers. Accordingly, the defendants' motion to dismiss Count I is granted.

### III. Count IV: The Warranty Disclosure Statement

■ Defendant CFC has also moved to dismiss plaintiffs' only other federal claim. This count names only CFC and Viking as defendants and, accordingly, this section applies only to CFC's motion to dismiss. In

---

1. Under the UCC's holder-in-due-course rule, if the assignee of a contract took the document for value in good faith, and without notice of any claims or defenses that could be asserted against the transferee, the assignee took the note free of any such claim or defense that were subsequently asserted. The rule was designed to promote the fungibility of commercial paper.

Count IV, plaintiffs allege that the warranty disclosure statement contained in the Kennedys' automobile sales contract was misleading and in violation of TILA. Plaintiffs further contend that CFC, as the assignee creditor of the Viking contract, is liable to the same extent that Viking is. As we noted above, if the contract in fact violates TILA, CFC can be held liable to the extent that the violation was apparent on the face of the contract. CFC argues, however, that the portion of the disclosure statement involving the warranty simply does not violate TILA and, consequently, Count IV must be dismissed on the merits. We disagree.

### A. The Warranty Disclosure

Section four of the Kennedys' contract was titled "Other Charges Including Amounts Paid to Others on Your Behalf." This section dealt with costs in addition to the basic sale price of the vehicle, such as taxes, filing and license fees, insurance, and the extended warranty. Subsection (b) of section four appeared as follows:

> b. Paid To: PORTFOLIO Amount: $780
> For: Ext. Serv. Cont.

In Count IV, plaintiffs claim that this section is misleading because it leads consumers to believe that the entire $780 is a fee, charged by Portfolio and collected by Viking on behalf of Portfolio, for the cost of the extended warranty. In reality, however, the entire $780 does not get passed through Viking to Portfolio. Plaintiffs charge that the cost of the warranty is substantially less than $780, and after paying that cost to Portfolio, Viking keeps the difference. Plaintiffs argue that the disclosure statement is inaccurate because the title of Section 4 and the contents of subsection 4(b) indicate that all charges contained therein are paid to another party, when in fact that is not the case.

Defendant argues that neither the title nor the contents of Section 4 are misleading, and there has consequently been no TILA violation. They base their argument on certain distinctions they perceive between the instant action and a recent 7th Circuit case, *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283, 285 (7th Cir.1997). *Gibson* dealt with three separate cases on appeal which are factually very similar to the present action. In that case the plaintiff, Gibson,

bought a car from Bob–Watson Chevrolet. *Id.* at 284–85. In conjunction with the purchase, the dealer gave Gibson a statement captioned, "Itemization of Amount Financed." *Id.* The statement contained a section entitled, "Amounts Paid to Others on Your Behalf," under which appeared the statement: "To North American for Extended Warranty $800." *Id.* Plaintiff alleged that a substantial amount of the finance charge was retained by Bob–Watson Chevrolet, rather than being paid to North American, as the disclosure statement represented. *Id.*

The court ruled that if a portion of the warranty was in fact being retained by the dealership, then the statement given to the consumers contained false representations prohibited by the Federal Reserve Board's Regulation Z, the implementing regulatory rules for the Truth in Lending Act. *Id.* at 284–85. *See* 12 C.F.R. § 226 *et seq.* Those rules provide that creditors shall disclose an itemization of the amount financed, including "[a]ny amounts paid to other persons by the creditor on the consumer's behalf," and the identity of such persons. 12 C.F.R. § 226.18. The rules further provides that such disclosures must be made clearly and conspicuously, 12 C.F.R. § 226.17(a)(1). It goes without saying that all disclosures must be accurate. The court in *Gibson* ruled that the disclosure statements were misleading because the contracts led consumers to believe that the entire warranty fee was paid to the warranty provider when, in fact, a substantial amount of the fee was actually retained by the dealership itself. *Gibson* at *2.

CFC concedes that, under *Gibson,* plaintiffs' extended warranty claim might be sufficient to withstand a motion to dismiss if their retail installment contract had used the "Amounts Paid to Others on Your Behalf" heading (Mo. to Dismiss. p. 10). CFC argues, however, that because the Viking contract used a variation of that heading, they should be distinguished. The Viking contract used the title, *"Other Charges Including* Amounts Paid to Others on Your Behalf" (emphasis added). According to CFC, this is sufficiently different from the heading used in *Gibson* so as to put purchasers on notice that some or all of the fee paid for the

extended warranty was going not to the warranty provider, but to Viking. We disagree.

It should first be observed that the stated purpose of TILA is to give consumers a functional understanding of what exactly it will cost them to use credit, as well as to provide meaningful and accurate disclosures of costs associated with consumer credit purchases. *See* 15 U.S.C. § 1601. Plaintiffs have aptly observed that the sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor. *See Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291, 296 (5th Cir.1978) (holding that the proper perspective in analyzing TILA disclosures is that of "ordinary laypersons engaged in consumer credit transactions"); *In re Cook*, 76 B.R. 661, 664 (Bkrtcy., C.D.Ill.1987) (noting that TILA disclosures should be construed through the eyes and understanding of the borrower, not the lender).

Given the practical, consumer-oriented view with which we must analyze the sufficiency of TILA disclosures, we think that Viking's disclosure section is no more informative to the average consumer than the heading found to be misleading by the Seventh Circuit in *Gibson*. Defendant would have us hold that the phrase, "Other Charges Including Amounts Paid to Others on Your Behalf," informs consumers that the charges listed, or even a portion of any individual charge listed, may be retained by the car dealership rather than actually being paid to another party. We fail to see any way in which the contract conveys such information in the meaningful, informative way required by TILA. 15 U.S.C. § 1601.

Moreover, CFC would have us reach these conclusions even though directly below the confusing section title described above, subsection (b) very plainly indicates that "$780" is "paid to" Portfolio, the warranty provider. Defendant CFC would apparently have us hold that this section informs consumers that whatever portion of the warranty is not being retained by Viking will be paid over to Portfolio. We disagree. It seems unlikely that the average consumer would read the Viking contract in the manner in which CFC contends they will. In any event, we cannot

hold that the contract in this case is so distinguishable from that in the Seventh Circuit's recent case, *Gibson*, as to justify a ruling contrary to that decision.

## B. The FRB Commentary to Regulation Z

Defendant CFC makes one further argument. The Federal Reserve Board, the agency that administers TILA and promulgates the rules and commentary pursuant to it in Regulation Z, issued its official staff commentary. A provision of the comments relates to the issue of whether or not dealers must disclose the fact that a portion of the warranty charge is retained by the dealer. It provides that the disclosure "*may* reflect that the creditor has retained a portion of the amount paid to others" (emphasis added) (Official Staff Commentary, Regulation Z). Defendant argues that this means that the dealer has the option of concealing or disclosing these facts because the rule does not say that the dealer "must" or "shall" make the disclosure. Until quite recently cases in many of the district courts were split on this issue. In *Gibson*, however, the Seventh Circuit finally resolved this dispute.

The *Gibson* defendants made the standard argument that the commentary should be construed as *allowing* car dealers to disclose the fact that not all of the warranty payment went to the warranty, but not *requiring* them to do so. On this argument the Seventh Circuit commented:

> In other words, [the defendants] read the commentary to say: "You may conceal the fact that you are pocketing part of the fee that is ostensibly for a third party, but if you are a commercial saint and would prefer to tell the truth, you may do that too." So interpreted, the commentary not only would be preposterous; it would contradict the statute. The only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention.

*Gibson*, 112 F.3d 283, 285–86.

In this case, CFC makes the exact argument that the defendants in *Gibson* made. Clearly, given the Seventh Circuit's recent

precedent on this issue, these arguments fail.[2]

### C. CFC's Liability for the Alleged Disclosure Violations

As discussed above, before liability for a disclosure violation can be imputed to CFC through the claims preservation clause, the violation must be apparent on the face of the disclosure documents. 15 U.S.C. § 1641. Plaintiff alleges that CFC, which had considerable experience in the area of automobile financing, knew that although the contract represented that the $780 warranty charge was paid to Portfolio, in fact it would be substantially retained by Viking. This allegation must be accepted as true for the purposes of a motion to dismiss. *Bohac v. West,* 85 F.3d 306 (7th Cir.1996). Thus, assuming CFC did have such knowledge, the alleged misrepresentation in the warranty disclosure would be "apparent" to CFC from the face of the document. Defendant does not contest this point.

Given the foregoing analysis, it cannot be said that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Accordingly, defendant's motion to dismiss Count IV must be denied.

### IV. Counts II, III, V and VI: The State Law Claims Under ICFA

Both AmeriCredit and CFC have also moved to have any state claims against them dismissed. Both defendants argue that if the federal TILA claims are dismissed, the court will no longer have supplemental jurisdiction over the state claims and, accordingly, dismissal is appropriate.

 With respect to AmeriCredit's motion, we agree. When federal claims are dismissed before trial, the district court has the discretion to dismiss state claims over which the court has assumed supplemental

jurisdiction and, generally, the court should do so in all but the rarest of instances. *See* 28 U.S.C. § 1367(c)(3); *Perino v. Mercury Finance Co. of Illinois,* 912 F.Supp. 313, 316 (N.D.Ill.1995). Consequently, because we have dismissed the only federal claim against AmeriCredit (Count I), we dismiss the state ICFA and MVRISA claims of Counts II and III without prejudice. This is a legally sufficient ground on which to dismiss these counts and, consequently, there is no need to hypothetically rule on AmeriCredit's other arguments for dismissal.

 Defendant CFC, on the other hand, is in a different position. Although we dismiss Count I (the alleged TILA violation arising from the cash/credit price discrepancy and non-disclosure thereof), we do not dismiss Count IV (the alleged TILA violation arising from deficiencies in the extended warranty disclosure). Because the state law claims arose from the same transaction or occurrence as the remaining federal claim, this court retains supplemental jurisdiction over all counts against CFC. *See* 28 U.S.C. § 1367; *Graves v. Tru–Link Fence Co.,* 905 F.Supp. 515 (N.D.Ill.1995) (holding that the federal district court retained supplemental jurisdiction over claims that the creditor had violated ICFA where consumer-plaintiff had also alleged federal claims against creditor under TILA). Defendants, however, urge us to consider dismissing the state counts on the merits. We conclude that of the state claims (Counts II, III, V, and VI), we deem it appropriate only to dismiss Count II.

 In Count II, plaintiffs allege that CFC should be held liable for Viking's failure to disclose as a finance charge the difference in price charged to customers paying with cash and those paying with credit. We found above that CFC could not be held liable for this alleged violation under TILA because federal law permits assignee creditors to be held liable only for violations that are apparent on the face of the contract, even when the contract contains a general claims pres-

**2.** We note that a case similar to both the present one and *Gibson,* styled *Taylor v. Quality Hyundai,* No. 96–3658, is presently on appeal before the Seventh Circuit. The issues are nearly identical to those considered in this opinion. That case has been fully briefed and argued, but not decided. We simply note that it seems extremely unlikely that the Seventh Circuit would reverse the portions of the opinion in *Gibson* on which we rely in the instant case.

ervation clause. The issue here is whether CFC can be held liable under the ICFA for the same acts for which we have determined it could not be liable under TILA. We think not.

The ICFA generally prohibits the use of unfair or deceptive practices in the conduct of any trade or commerce and entitles any consumer harmed by such practices to bring an action against the wrongdoer. 815 ILCS 505/2. The Act also provides that it does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (1995). In this case, TILA exempts assignee creditors from being liable for violations not apparent on the face of the documents. We think that limitation prevents CFC from being held liable under the ICFA. Thus, defendant CFC's motion to dismiss Count II is granted.

■■■ Using similar reasoning, however, we deny defendant's motion to dismiss Counts III, V and VI, which allege that CFC is liable under ICFA, 815 ILCS § 505/2, 2E–F, and MVRISA, 815 ILCS § 375/5, for Viking's failure to make accurate disclosures regarding the extended warranty. Like TILA, the MVRISA requires accurate and meaningful disclosure of finance charges. 815 ILCS § 375/5(4). For the claims to survive defendant's motion to dismiss, plaintiff must plead (and ultimately prove) that (1) the defendants engaged in a deceptive act or practice, (1) the defendants intended plaintiffs to rely on the deception and (3) the deception occurred in the course of conduct involving trade or commerce. *Hernandez v. Vidmar Buick Co.*, 910 F.Supp. 422, 427 (N.D.Ill.1996). Plaintiff's complaint has plainly met these requirements.

CFC, however, argues at considerable length that a defendant cannot be held liable under these Illinois statutes for conduct that satisfies the requirements of TILA. However, we have held that, with respect to the extended warranty section of the contract, plaintiff has made out a facially sufficient claim that defendant's conduct *has not satisfied* the TILA disclosure provisions. Likewise, plaintiff has made out a facially sufficient claim that defendant has violated the state statutes. Accordingly, CFC's motion to

dismiss Count II is granted, but the motion to dismiss Counts III, V, VI is denied.

### CONCLUSION

For the aforestated reasons, AmeriCredit's motion to dismiss is granted in its entirety and CFC's motion to dismiss is granted in part and denied in part.