In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1224

SIEGFRIED LIFANDA,

Plaintiff-Appellant,

v.

ELMHURST DODGE, INCORPORATED,
UNITED SECURITY SYSTEMS, INCORPORATED
and WILLIAM C. NAZHA,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 5830--William J. Hibbler, Judge.

Argued September 14, 2000--Decided January 12, 2001

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

ROVNER, Circuit Judge. Siegfried Lifanda purchased a 1999 Dodge Caravan from Elmhurst Dodge on July 2, 1999, which he financed by entering into a retail installment contract. As part of the vehicle purchase, Elmhurst Dodge also sold Lifanda "Auto Theft Registration" protection (ATR), which was an anti-theft etching identification program that promised to pay Lifanda the lesser of $3000 or the amount paid by his insurance company, if his vehicle was stolen within three years from the date of purchase. The ATR was issued by defendant United Security Systems, Inc., for $389.52 and was underwritten by an insurance company. Lifanda complains that the ATR is a form of property insurance protecting against theft of the vehicle, and that the defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. sec. 1601 et seq., by failing to include the ATR charge as part of the finance charge.

The district court granted Elmhurst Dodge's motion to dismiss the TILA claim, and declined to exercise jurisdiction over the remaining state law claims. The court noted that the TILA requires lenders to clearly and accurately disclose the finance charges that customers will

bear in credit transactions, citing 15 U.S.C. sec. 1683(a)(3), and that TILA includes insurance premiums in its definition of finance charges. TILA provides that

charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property . . . shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

15 U.S.C. sec. 1605(c). The regulation implementing that provision, referred to as Regulation Z, largely tracks that language, stating that premiums for insurance against loss or damage may be excluded from the disclosure requirements if the consumer is informed (1) that the insurance coverage may be obtained from a person of the consumer's choice; and, for insurance obtained through the creditor, the consumer is notified of (2) the amount of the premium, and (3) the term of the insurance. 12 C.F.R. sec. 226.4(d)(2). The district court held that the disclosures made by the defendants satisfied those requirements, and thus granted the motion to dismiss.

On appeal, Lifanda asserts that the court erred in holding that the disclosures made by the defendants satisfied the TILA requirements as a matter of law. Specifically, Regulation Z mandates that the TILA disclosures be made "clearly and conspicuously," 12 C.F.R. sec. 226.17, and Lifanda argues that the court could not properly find as a matter of law that the alleged disclosures were clear and conspicuous here. As an initial matter, we note that although the motion in this case was brought pursuant to Rule 12(b)(6), we have made it clear that Rule 12(b)(6) is not the appropriate vehicle for such a dismissal. Smith v. Check-N-Go of Illinois, Inc., 200 F.3d 511, 514 (7th Cir. 1999); Walker v. National Recovery, Inc., 200 F.3d 500 (7th Cir. 1999). As in Check-N-Go, allegations that disclosures are not "clear and conspicuous" state a claim upon which relief may be granted. Id. "The possibility that the allegation is false-- even that attachments to the complaint demonstrate its falsity--does not mean that the complaint fails to state a claim. Instead the attachments authorize the district court to grant judgment on the pleadings under Rule 12(c), or to convert the motion to dismiss into a motion for summary judgment and to grant that relief (a

possibility raised by Rule 12(b) itself)." Check-N-Go, 200 F.3d at 514. Therefore, the motion should have been converted into one for judgment on the pleadings or for summary judgment. In any event, we review the court's decision de novo, examining all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. Flenner v. Sheahan, 107 F.3d 459, 461 (7th Cir. 1997); Autry v. Northwest Premium Services, Inc., 144 F.3d 1037, 1039 (7th Cir. 1998). We will uphold dismissal of a complaint only if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id.

We view the "'sufficiency of TILA-mandated disclosures . . . from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor.'" Smith v. Cash Store Management, Inc., 195 F.3d 325, 327-28 (7th Cir. 1999), quoting Cemail v. Viking Dodge, 982 F. Supp. 1296, 1302 (N.D. Ill. 1997). Therefore, our task is to determine whether, taking the facts in the light most favorable to Lifanda, the TILA disclosures were clear and conspicuous to an ordinary consumer as a matter of law. The defendants in fact rely upon three different documents to satisfy the TILA disclosures here, which are reproduced in relevant part in the appendix to this opinion./1 According to the defendants, the retail installment contract informed Lifanda that he could obtain ATR insurance elsewhere, the purchase order revealed the premium for the ATR protection, and the ATR form set forth the term of the ATR protection.

We turn first to the retail installment contract, which provides in pertinent part:

Liability insurance coverage for bodily injury and property damage caused to others is not included in this contract. You may obtain vehicle insurance from a person of your choice.

Credit life, credit disability, guaranteed automotive protection coverage, and other optional insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the premium.

Immediately below those clauses, the contract contains four boxes, with a space to be checked if that box is applicable. Three of the boxes are respectively labeled, "CREDIT LIFE," "CREDIT DISABILITY," and "MECHANICAL BREAKDOWN _____," with the fourth being generically labeled "TYPE _____." Within each box, there are spaces for the following information to be provided:(a) "TERM," (b) "PREMIUM," and (c) "INSURER." Each

box also contains a line for the consumer to sign if she wants to purchase that optional insurance. None of the boxes are checked which indicates that no insurance is being provided under the contract, and next to each space ("premium," "insurer," etc.) is typed "N/A" for Not Applicable.

   The defendants maintain that the above section clearly and conspicuously informs Lifanda of his right to obtain ATR insurance elsewhere. That argument, however, is problematic on a number of levels. First, the sentences must be read in context rather than in isolation. The first sentence of the initial 2-sentence paragraph informs the purchaser that certain types of insurance--bodily injury and property damage caused to others--are not included in the contract. Immediately following that sentence is the statement that "you may obtain vehicle insurance from a person of your choice." An ordinary construction of that paragraph would lead the reader to conclude that liability coverage for bodily injury or property damage caused to others is not included in the contract, but may be obtained from other persons. It says nothing about insurance that is provided in the contract. We simply cannot conclude as a matter of law that the statement provides clear and conspicuous notice that ATR protection included in the contract may be obtained elsewhere.

   Our concerns are magnified by another problem, which is the failure of any document to identify ATR protection as a form of insurance. In fact, although they concede the point solely for the purpose of the motion to dismiss, the defendants otherwise maintain that ATR protection is not insurance. Given that even the defendants are not certain that ATR protection should be considered insurance, and that the documents do not identify it as such, it is particularly unconvincing for the defendants to argue that a sentence informing Lifanda of the right to obtain vehicle insurance elsewhere is clear and conspicuous notice that he can obtain ATR protection from others.

   Finally, this potential for confusion is further heightened by the section that follows the one quoted above. As is set forth above, the subsequent text provides that credit life, credit disability, guaranteed automotive protection, and other optional insurance are not required and will not be provided unless the buyer signs and agrees to pay the premium. Four boxes following that text set forth those categories, with the last box generically labeled "Type _____," presumably to include the category of "other optional insurance." Like the other boxes, however, that box is not checked and is marked

"N/A" for not applicable. That indicates that no optional insurance is being provided under the contract, which would further negate any implication that ATR protection was "vehicle insurance" under the disclosure statement. In other words, in the one section that would have identified ATR protection as insurance, the defendants failed to make that connection, and instead created the opposite perception by denying that any optional insurance was being provided under the contract even though ATR protection was being provided. That failure to identify ATR protection as insurance further decreases the likelihood that the buyer would read the disclosure statement as including ATR protection, and thus that the disclosure could be considered clear and conspicuous as a matter of law. In fact, a plain reading of the section provides no clue that it relates to ATR protection, or to any other insurance provided under the contract, and thus it provides little, if any, support for a finding that the TILA disclosure requirement is met. In summary, we cannot hold as a matter of law that the above disclosure satisfied TILA where (1) the disclosure was made in the context of a discussion of insurance not provided in the contract rather than insurance included in the contract, (2) the ATR protection is never labeled "insurance," and (3) parts of the contract imply that it is not considered insurance at all.

The other TILA disclosure requirements at issue concern the term of the insurance and the amount of the premium. Here, too, the defendants are not entitled to judgment at this stage. The term of the insurance is set forth in the Auto Theft Registration form, but is set forth in the smallest type on the form, which is so minuscule as to be barely legible. Although the district court notes that TILA does not mandate any minimum type size, it simply does not follow that type size is irrelevant to a determination of whether a disclosure is "conspicuous." If the term "conspicuous" is to retain any meaning at all, it cannot be met as a matter of law by type disproportionately small to that in the rest of the document, and which is itself barely legible. See Channell v. Citicorp National Services, Inc., 89 F.3d 379, 382 (7th Cir. 1996) (noting that the term "conspicuous" is a staple of commercial law that refers to the mode of presentation, and is defined in the UCC as "so written that a reasonable person against whom it is to operate ought to have noticed it.") Far from being conspicuous, the "disclosure" here is quite the opposite.

Finally, the amount of the premium is allegedly set forth on the purchase order under the

category "Vehicle Theft Registration." Nothing in the documents, however, identifies that as a premium or the Vehicle Theft Registration as insurance. The documents do not even indicate whether that is the only payment due for ATR coverage. On the retail installment contract itself, as previously discussed, the boxes identifying insurance coverage are all marked "N/A," as is the space marked "PREMIUM," thus indicating that no premiums are being paid for any type of "other optional insurance not required to obtain credit," which would presumably include ATR protection. On that contract, the ATR payment is not separately listed at all, but rather was already added in to the price listed as the "Cash Price" for the vehicle. The forms are thus ambiguous at best on critical issues such as whether the payment is a premium for insurance. In addition, the ATR protection covered a three-year term, and nothing in the documents indicates whether the premium is an annual or a one-time payment. We cannot state as a matter of law that the amount of the premium is clearly and conspicuously set forth in the documents.

That would end our discussion, except that the defendants propose an alternative argument for affirmance. They contend that the TILA disclosures are not even required because the ATR protection was not a finance charge under TILA. The defendants argue that a charge is considered a "finance charge" only if it is imposed as an incident to the extension of credit, and does not include charges of a type payable in a comparable cash transaction. For that proposition, the defendants rely on 15 U.S.C. sec. 1605(a), which defines "finance charge" as follows:

(a) "Finance charge" defined. Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. . . .

See also 12 C.F.R. sec. 226.4(a). The defendants argue that the ATR charge was not imposed as an incident of the extension of credit, and thus is not subject to the TILA disclosure requirements.

As support for that contention, the defendants analogize the ATR protection to the GAP debt cancellation insurance discussed by this court in McGee v. Kerr-Hickman Chrysler Plymouth, 93 F.3d

380 (7th Cir. 1996). GAP debt cancellation insurance protects a buyer in the event that the car is stolen, and limits the buyer's liability in such a circumstance to the actual cash value of the vehicle as determined by the buyer's insurance company plus any past due charges at that time. The buyer is thus insured against the risk of a shortfall (or "gap") between the cash value determined by the insurance company and the amount still owed on the car. The McGee court began by noting that Regulation Z provides a number of examples of charges that are included and excluded as "finance charges," but that neither list specifically addressed debt cancellation agreements like GAP. Id. at 383. The court then held that the GAP coverage was not "incident to the extension of credit" because it did not affect the credit terms of the deal between McGee and Kerr-Hickman, and concluded that it therefore was not a "finance charge" under TILA. Id. at 384-85. The defendants assert that the ATR protection in this case is analogous to the debt cancellation coverage, in that it does not affect the credit terms and thus should not be considered a "finance charge."

The reliance on McGee is misplaced. In contrast to the GAP coverage in McGee, the type of insurance at issue here is explicitly included in the statute as a "finance charge:"

(c)  Property damage and liability insurance premiums included in finance charge. Charges or premiums for insurance written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, shall be included in the finance charge . . . .

15 U.S.C. sec. 1605(c); see also 12 C.F.R. sec. 226.4(b)(8). Therefore, the statute identifies this premium as a finance charge, and we need not engage in the type of analysis that the McGee court had to embark on once it determined that debt cancellation insurance was not referenced in the statute itself.

Moreover, the McGee court's conclusion that GAP coverage is excluded from "finance charges" under the statute is inapposite because subsequent to the McGee decision, the Federal Reserve Board issued a final rule which amended the Regulation Z list of finance charges to explicitly include debt cancellation coverage written in connection with a credit transaction. 61 Fed. Reg. 49237-02. That rule specifically stated that it was imposing no additional disclosure requirements, but was merely a clarification that fees charged for debt cancellation coverage are considered finance charges. Id. at 49238. Therefore, the

Federal Reserve Board has interpreted TILA in a manner contrary to the conclusion in McGee, and we owe deference to that interpretation unless it is "demonstrably irrational." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980). McGee itself in fact recognized that pending official staff commentary from the Federal Reserve Board would almost certainly result in a different conclusion on the issue of whether GAP protection charges were finance charges, and that official staff opinions are binding unless demonstrably irrational. 93 F.3d at 383-84. At the time of the McGee opinion, however, the proposed commentary had been withdrawn, and the court therefore proceeded with its analysis. Id. at 384. The McGee court noted, however, that even if the GAP charges were treated as finance charges under TILA, the disclosure requirements were met and thus the result would be the same. Therefore, the McGee reasoning is unhelpful to the defendants, given that the subsequent rule reached the conclusion that debt cancellation insurance is in fact included in the finance charge under Regulation Z. The ATR insurance at issue here is property insurance against loss or damage which is explicitly included in the statute as a finance charge, and the defendants have provided no convincing rationale for ignoring that plain language.

Because the district court properly analyzed the ATR protection as a finance charge under TILA, the disclosure requirements apply. As set forth above, the defendants have failed to establish as a matter of law that the proper disclosures were made, and their motion to dismiss on that basis should have been denied. Accordingly, the decision of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
Reversed and Remanded.

/1 12 C.F.R. sec. 226.17(a) states that the required disclosures shall be grouped together and be segregated from everything else, but indicates that the disclosures under sec. 226.18(n) "may be made together with or separately from other required disclosures." 12 C.F.R. sec. 226.17 n.38. The sec. 226.18(n) disclosures are those required in order to exclude insurance premiums from the finance charge, including the disclosures that insurance may be obtained from other persons, and the amount of the premium and term of the insurance. Here, those three disclosures are made in three different documents. Lifanda does not argue that those sec. 226.18(n) disclosures must themselves be grouped together even though they may be separate from

the other disclosures required by sec. 226.18. Both parties, therefore, assume not only that the three sec. 226.18(n) disclosures can be made separately from the other sec. 226.18 disclosures such as the finance charge and APR, but that those three disclosures may be made separately from each other and thus that even the sec. 226.18(n) disclosures themselves need not be grouped together. Because Lifanda does not challenge the failure to group the sec. 226.18(n) disclosures together, we express no opinion on whether that is consistent with the regulations.


APPENDIX